ORIGINAL

FILED
2008 JAN -3 PM 4:13
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____KWK_____ DEPUTY

BY FAX

1  H. CHRISTIAN L'ORANGE (State Bar No. 71730)
   S. FEY EPLING (State Bar No. 190025)
2  DRINKER BIDDLE & REATH LLP
   50 Fremont Street, 20th Floor
3  San Francisco, California 94105-2235
   Telephone: (415) 591-7500
4  Facsimile: (415) 591-7510
   Email: Fey.Epling@dbr.com
5
   Attorneys for Plaintiff
6  THE LINCOLN NATIONAL LIFE INSURANCE
   COMPANY
7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10  THE LINCOLN NATIONAL LIFE       Case No. 08 CV 0023 IEG NLS
    INSURANCE COMPANY,
11                                   COMPLAINT FOR DECLARATORY
                Plaintiff,           JUDGMENT
12
         v.
13
    H. THOMAS MORAN, II, Court-
14  Appointed Receiver of LYDIA CAPITAL,
    LLC,
15
                Defendant.
16

17

18

19      Plaintiff, The Lincoln National Life Insurance Company, as successor by merger

20  to Jefferson-Pilot Life Insurance Company ("Lincoln"), by and through its attorneys,

21  hereby files this Complaint for Declaratory Judgment, and in support thereof, avers as

22  follows:

23      1.     This is an action for Declaratory Judgment under 28 U.S.C. § 2201,

24  wherein Lincoln seeks a declaration establishing its rights and obligations pursuant to a

25  policy of life insurance issued to The Black Irrevocable Trust (the "Trust") in material

26  reliance upon misrepresentations made by the policy applicant. Moreover, upon

27  information and belief, the policy in question was procured in order to be sold in the

28  secondary life insurance market and, as such, lacked an insurable interest at the time of

issuance. Upon information and belief, Lydia Capital, LLC ("Lydia"), an entity formerly engaged in secondary market transactions, acquired a beneficial interest in the Trust after the policy was issued. Lydia is currently in receivership following the initiation by the United States Securities and Exchange Commission ("SEC") of an enforcement action alleging Lydia and its principals committed, among other purported illegalities, securities fraud.

**PARTIES**

2. Plaintiff Lincoln is a life insurance company organized and existing under the laws of the State of Indiana, located at 1300 South Clinton Street, Ft. Wayne, Indiana 46802.

3. Defendant H. Thomas Moran, II ("Mr. Moran" or the "Receiver") is a natural person with an address of 521 W. Wilshire, Suite 200, Oklahoma City, Oklahoma 73116. By order of court, Mr. Moran was appointed Receiver of Lydia, a limited liability company organized and existing, upon information and belief, under the laws of the State of Delaware, and located at 28 State Street 11th Floor, Boston, Massachusetts.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiff and the Defendant.

5. In addition, this action may be brought in this Court pursuant to 28 U.S.C. §§ 754 and 959(a), inasmuch as Lincoln brings this action with respect to the Receiver's acts and transactions in carrying on business connected with property which, upon information and belief, is within the Lydia receivership. Furthermore, on November 11, 2007, the District Court for the District of Massachusetts, the court that appointed Mr. Moran, granted Lincoln leave to file an action concerning the validity of the policy issued to the Trust.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to the claim occurred herein, and because a

2

COMPLAINT FOR DECLARATORY JUDGMENT                                      CASE NO.

substantial part of the property that is the subject of this action is situated herein.

## BACKGROUND

### Investor-Originated Life Insurance

7. Over the last decade, a secondary market has emerged in which speculative investors have sought to obtain, and in many cases have succeeded in obtaining, a pecuniary interest in life insurance policies.

8. These speculators do not acquire an interest in life insurance policies insuring the lives of persons with whom they have a familial relationship, or in whose longevity they possess a legally recognized interest; instead, these speculators purchase policies that insure the lives of strangers – or, in many cases, purchase the beneficial interests in insurance trusts or ownership interests in shell corporations that own those policies – in the expectation that they will profit by the deaths of the insureds.

9. Such arrangements are commonly referred to as IOLI, which stands for "investor-originated life insurance," or STOLI, which stands for "stranger-originated life insurance." (For ease of reference, these transactions are referred to as "STOLI" herein.)

10. STOLI transactions run afoul of state insurable interest laws, which protect the integrity of life insurance by requiring policy owners to have a cognizable interest in the longevity of the insureds at the time the policy is issued.

11. Speculators, who are the true intended owners of STOLI policies, attempt to circumvent these laws by carefully constructing their transactions to hide the fact that the policies are not being procured to satisfy legitimate insurance needs but instead are being procured as impermissible investments.

12. The speculators typically first find a relatively older and high-net worth individual willing to participate in the investment transactions. Logically, the STOLI investors seek out the highest anticipated rates of return when choosing the life insurance policies on which they will speculate. This means the typical life insurance policy to which speculators gravitate insures the life of an individual aged seventy or older, with a net worth of over one million dollars. Such an individual can obtain large value policies,

and, actuarially speaking, is expected to have a relatively limited lifespan. For these and other reasons these individuals are targeted by STOLI speculators.

13. The speculators must also determine the resale value of the policy in the secondary market; this value is based largely upon the life expectancy of the prospective insured. The shorter the expected lifetime of the prospective insured, the more valuable the policy is to those who would gamble on his or her life. Prior to the resale of a policy, the prospective insured often submits to a life expectancy analysis, the results of which may be provided to putative investors.

14. Once the speculators locate an individual who meets their investment profile, and, more importantly, will agree to collaborate in the STOLI arrangement, an application is made for one or more insurance policies. The speculators typically pay most or all of the prospective insured's costs, including premium payments. Some speculators even agree to pay the prospective insured a fee upon the issuance of the policy.

15. In many cases, the policy application indicates that a third-party entity, such as a trust, a shell corporation or a limited partnership, will be the owner and/or beneficiary of the life insurance proceeds. This permits the speculators to acquire an interest in this holding entity – and, most importantly, in the death benefit that will later be disbursed by the insurer – without disclosing the fact of their ownership to the insurer.

16. Another way the investors assure ownership of the policy is to loan the insured the funds to pay the premium for a finite period of time, usually for the two-year contestability period. Once this contestability period has expired, the insured can either repay the loan or assign the policy to the investors, thus completing the transaction. The loan is structured in a way to encourage the insured to assign the policy to the investors by, among other things, loaning the funds at a high interest rate.

17. While there are many variations, all STOLI programs have one thing in common: their objective is to give investors who have no insurable interest in the life of the insured a stake in an insurance policy on the life of a complete stranger.

### Issuance of the Policy to the Trust

18. On or about December 22, 2006, an application (the "Application") was submitted to Lincoln for a $3,000,000.00 life insurance policy on the life of Roy Keith Black ("Mr. Black"). A true and correct copy of the Application, with redactions of certain personal identifiers, private health information and financial account data, is attached hereto as Exhibit "1." The Application contained multiple material misrepresentations.

19. At the time the Application was submitted, Mr. Black, the applicant, was 79 years old. *See* Exhibit "1."

20. The Application identified the "Roy Black Irrev. Trust" as the proposed owner and policy beneficiary. *See* Exhibit "1." (The ownership and beneficiary designations of the Policy were subsequently changed to the Lydia Capital Alternative Investment Fund). According to the Trust Agreement purportedly establishing the Trust, the law firm of Dawson & Ozanne ("Dawson") was to serve as trustee. A true and correct copy of the Trust Agreement, with redactions of certain personal identifiers, is attached hereto as Exhibit "2."[1] Upon information and belief, Dimetri Reyzin, Esq., ("Mr. Reyzin"), a Dawson attorney, executed the Trust documents on behalf of Dawson and signed the Application, in his apparent capacity as signatory for Dawson. *See* Exhibits "1" and "2."

21. The Application indicated Mr. Black had a net worth of $2,910,000.00 and an annual income of $120,000.00. *See* Exhibit "1." The Application also indicated Mr. Black had not filed for bankruptcy within the past five years. *See id.*

22. However, upon information and belief, on or about February 16, 2005, Mr. Black filed a Voluntary Petition for bankruptcy (the "Bankruptcy Petition") under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court

---

[1] The Trust Agreement identified the Trust as the "Black Irrevocable Trust." *See* Exhibit "2." Upon information and belief, the "Roy Black Irrev. Trust" and the "Black Irrevocable Trust" are one and the same entity.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\393335\2

COMPLAINT FOR DECLARATORY JUDGMENT

5

CASE NO.

for the Southern District of California. A true and correct copy of the Bankruptcy Petition, with redactions of certain personal identifiers and financial account data, is attached hereto as Exhibit "3."

23. The Bankruptcy Petition indicated the total assets of Roy Keith Black were approximately *negative* $117,400.00 as of February 16, 2005, the date of filing. *See* Exhibit "3." The Bankruptcy Petition moreover indicated the "Current Income" of Roy Keith Black was $14,916.00. *See id.*

24. Upon information and belief, prior to finalizing and submitting the Application to Lincoln, Mr. Black and Mr. Reyzin, or individuals acting on their behalf, engaged in discussions regarding the possible sale or assignment of the prospective policy, and/or an interest in the Trust that was to own the same.

25. Nevertheless, in the Application submitted to Lincoln, Mr. Black denied he had "been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider." *See* Exhibit "1."

26. In an Amendment to Application for Insurance (the "Amendment"), Mr. Reyzin also denied he had "been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider." A true and correct copy of the Amendment is attached hereto as Exhibit "4." Moreover, in the Amendment, Mr. Black and Mr. Reyzin represented that they "ha[d] not been involved in any discussion about the possible sale or assignment of this policy as an inducement to purchase the life insurance policy for sale at a later date," or in "any discussion about the possible sale of a beneficial interest in a trust, LLC, or other entity created, or to be created, on [their] behalf." *See id.*

27. Upon information and belief, within weeks of submitting the Application, and in furtherance of their prior discussions regarding their intent to transfer the policy for which they were applying, Mr. Black and Mr. Reyzin, or individuals acting on their behalf, obtained a life expectancy report for Mr. Black. This report, upon information and belief, was procured to facilitate the eventual sale or assignment of the policy for

which they were applying, and/or an interest in the Trust, in the secondary life insurance market.

28. On January 28, 2007, Lincoln issued life insurance policy number JF5567566, with a total death benefit of $3,000,000.00 (the "Policy") on the life of Mr. Black. A true and correct copy of the Policy, with redactions of certain personal identifiers, private health information and financial account data, is attached hereto as Exhibit "5." Both the Application and the Amendment were made part of the Policy. *See* Exhibit "5."

29. The Trust was listed as both owner and beneficiary of the Policy. *See* Exhibit "5."

30. Upon information and belief, within weeks of applying for the Policy, Mr. Reyzin, on behalf of Dawson in its capacity as trustee of the Trust, completed the sale and/or assignment of a beneficial interest in the Trust to a person or entity in the secondary life insurance market. Upon information and belief, a beneficial interest in the Trust was eventually acquired by Lydia and incorporated into Lydia's portfolio of assets.

### The Securities and Exchange Commission's Enforcement Action Against Lydia Capital

31. On or about April 12, 2007, the SEC initiated an enforcement action in the United States District Court for the District of Massachusetts against Lydia and its principals, alleging Lydia carried out a "fraudulent investment scheme" through its sale of "limited partnership interests" in the Lydia Capital Alternative Investment Fund (the "Fund"). A true and correct copy of the SEC's Complaint in that action, *SEC v. Lydia Capital, LLC, et al.*, Civ. Action No. 1:07-10712-RGS, is attached hereto as Exhibit "6."

32. The SEC alleged Lydia, through the sale of the partnership interests in the Fund, failed to disclose "that the Fund's principal underlying assets – i.e., life insurance policies – may be either worthless or virtually worthless." *See* Exhibit "6," ¶ 2.

33. The SEC alleged the life insurance policies may be worthless because the policy applicants "falsely claimed that they had no intention to sell their policies" at the

1 | time they applied for insurance. *See* Exhibit "6," ¶ 13.

2 | 34. According to the SEC, as a result of these false claims, the "[l]ife insurance companies have a right to rescind the [fraudulent] policies based on false representations in the application." *See* Exhibit "6," ¶ 14."

35. On or about May 1, 2007, the SEC filed an Amended Complaint which further detailed the violations of securities laws allegedly committed by Lydia. A true and correct copy of the SEC's Amended Complaint is attached hereto as Exhibit "7."

36. According to the SEC, in "at least five instances," the insurance applications and related documents "presented a strong possibility of fraud that could lead to rescission." *See* Exhibit "7," ¶ 64. Among those purportedly fraudulently procured policies was a "$3 million policy issued on RB." *See id.*, ¶ 65.

37. Upon information and belief, the insured referred to as "RB" is Mr. Black.

38. As stated by the Commission, this "strong possibility of fraud" on the "$3 million policy issued on RB" was based upon the insured answering "'no' to the question on [the] application[] asking whether [he] ever discussed the possible sale or assignment of [the] policy in a life settlement transaction" and Lydia "possess[ing] strong circumstantial evidence in documents that would or should have been reviewed as part of [Lydia's] deal diligence, indicating that the insureds' representations were incorrect." *See* Exhibit "7," ¶¶ 64-5.

39. The SEC stated some of the "strong circumstantial evidence" which should have led to Lydia knowing the insured's "representations were incorrect" included allegations that the insured: (1) "obtained independent life expectancy evaluations … within two to five weeks of submitting [his] application[]"; and (2) "sold interests in [the] [P]olic[y] to [Lydia's] indirect agents within approximately one to five weeks after applying for coverage." *See* Exhibit "7," ¶ 65.

40. The SEC moreover alleges that the Policy has the markings of secondary market insurance fraud. The SEC describes a practice called "wet –inking," "which involves the purchase of an insurance policy purely for the purpose of selling it in a life

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SFI\393335\2

COMPLAINT FOR DECLARATORY JUDGMENT

8

CASE NO.

1 settlement transaction immediately after issuance, or while the ink on the policy is still
2 "wet."' *See* Exhibit "7," ¶ 68. The SEC contends that Lydia participated in such
3 practices with respect to the Black Policy, among other policies, and, therefore, "that the
4 policies would be subject to a challenge on insurable interest grounds." *See id.*, ¶ 69.

### COUNT I

### DECLARATORY JUDGMENT – MATERIAL MISREPRESENTATION

41. Lincoln hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

42. Upon information and belief, Mr. Black made misrepresentations to Lincoln on the Application and concerning his involvement in discussions of the possible sale of the Policy to a life settlement, viatical or other secondary market provider. Upon information and belief, Mr. Reyzin made the same misrepresentation on the Amendment. Moreover, upon information and belief, both Mr. Black and Mr. Reyzin made misrepresentations on the Amendment regarding their involvement in discussions about the possible sale of a beneficial interest in a trust, LLC, or other entity created, or to be created, on Mr. Black's behalf.

43. Mssrs. Black and Reyzin knew, or should have known, of the falsity of their respective representations concerning their involvement in discussions of the possible sale of the Policy to a life settlement, viatical or other secondary market provider, or of the possible sale of a beneficial interest in a trust, LLC, or other entity created, or to be created, on Mr. Black's behalf. The misrepresentations of Mssrs. Black and Reyzin in the Application and Amendment were material and invoked Lincoln's reliance; indeed, the misrepresentations of Mssrs. Black and Reyzin had a significant bearing upon Lincoln's decision to issue a policy insuring the life of Mr. Black.

44. Lincoln is entitled to a judicial declaration that, pursuant to Cal. Ins. Code §§ 359 and 331, the Policy is void *ab initio*, as it was issued by Lincoln in reliance upon material misrepresentations made by the Policy applicants as described above, and/or in reliance upon material misrepresentations which may be revealed through the discovery

process; or, in the alternative, that the material misrepresentations constitute grounds for rescission of the Policy by Lincoln.

### COUNT II

### DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

45. Lincoln hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

Upon information and belief, the Policy was issued to, at the behest of, and/or under the direction of, a party or parties possessing no insurable interest recognized under the law of California and, in any event, there was a lack of insurable interest in connection with the Policy.

46. Upon information and belief, Mr. Reyzin, on behalf of Dawson in its capacity as trustee of the Trust, completed the sale and/or assignment of a beneficial interest in the Trust, which was eventually acquired by Lydia. The purpose of the series of transactions was to conceal the agreements whereby Lydia engaged in a gamble upon the life of Mr. Black.

47. Lincoln is entitled to a judicial declaration that, pursuant to Cal. Ins. Code §§ 280 and 10110.1, the Policy is void *ab initio*, or, in the alternative, that the lack of insurable interest at the time of policy issuance constitutes grounds for rescission under California law.

### RELIEF REQUESTED

WHEREFORE, Lincoln respectfully requests the entry of an Order by this Court declaring:

A. Whether the Policy is void *ab initio*, or in the alternative, whether Lincoln may rescind the Policy, due to the material misrepresentations made by Mssrs. Black and Reyzin on the application materials and relied upon by Lincoln;

B. Whether the Policy was unsupported at the time of issuance by any legally cognizable insurable interest under California law and, as such, is void *ab initio*, or in the alternative, whether the lack of insurable interest at the time of policy issuance constitutes

1  grounds for rescission under California law;

2      C.    Whether Lincoln may retain some or all of the premiums paid pursuant to
3  the Policy;

4      D.    Whether Lincoln is awarded attorney's fees and costs associated with
5  seeking this judgment; and

6      E.    Whether Lincoln is granted such further relief as this Court deems
7  appropriate.

Respectfully Submitted,

Dated: January 3, 2008

_____
S. FEY EPLING

DRINKER BIDDLE & REATH LLP
Attorneys for Plaintiff
THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY

*Of Counsel*

STEPHEN C. BAKER
MICHAEL J. MILLER
JASON P. GOSSELIN
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\393335\2

COMPLAINT FOR DECLARATORY JUDGMENT

11

CASE NO.

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

**DEFENDANTS**
H. THOMAS MORAN, Court-Appointed Receiver of LYDIA CAPITAL, LLC

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Indiana
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Oklahoma
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
S. Fey Epling
Drinker Biddle & Reath LLP
50 Fremont Street 20th Floor
San Francisco, CA 94105
(415) 591-7500

ATTORNEYS (IF KNOWN)

'08 CV 0023 IEG NLS

BY FA

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)  28 U.S.C. § 2201 Declaratory Judgment re: Insurance Contract.

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | LABOR | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $    CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See Instructions):  JUDGE _____   Docket Number _____

DATE: January 3, 2008

SIGNATURE OF ATTORNEY OF RECORD: S. Fey Epling

PAID $350  1/3/08  DH 12  RPT # 146105

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

```
        UNITED STATES
        DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA
          SAN DIEGO DIVISION

        # 146105    - BH

        January 03, 2008
           16:19:35


        Civ Fil Non-Pris
USAO #.: 08CV0023 CIVIL FILING
Judge..: IRMA E GONZALEZ
Amount.:                  $350.00 CK
Check#.: BC#65636



Total-> $350.00



FROM: CIVIL FILING
      LINCOLN FIN. LIFE V. MORAN ET
```